1      UNITED STATES DISTRICT COURT
       DISTRICT OF NEW JERSEY

2

3 _____

 NOREEN SUSSINO,

4     PLAINTIFF

5  Vs.        CIVIL NO.
           15-5881 (PGS)

6 WORK OUT WORLD, INC., et al,
      DEFENDANTS

7 _____

8

        **AUGUST 1, 2016**

9        CLARKSON S. FISHER COURTHOUSE
        402 EAST STATE STREET

10       TRENTON, NEW JERSEY  08608

11

12 B E F O R E:   THE HONORABLE PETER G. SHERIDAN
        U.S. DISTRICT COURT JUDGE

13       DISTRICT OF NEW JERSEY

14

 A P P E A R A N C E S:

15

   MARCUS ZELMAN, LLC

16   BY:  ARI H. MARCUS, ESQUIRE
   FOR THE PLAINTIFF

17

   ANSELL, GRIMM & AARON, PC

18   BY:  JOSHUA S. BAUCHNER, ESQUIRE
   FOR THE DEFENDANT

19

20

21 **HEARING ON MOTION TO DISMISS**

22

23       Certified as true and correct as required
       by Title 28, U.S.C. Section 753

24       /S/ Francis J. Gable
       FRANCIS J. GABLE, C.S.R., R.M.R.

25       OFFICIAL U.S. REPORTER
       (856) 889-4761

1       THE COURT:  The first matter is Sussino versus Work

2  Out World.  Do you want to enter your appearances?  We will

3  start with the plaintiff.

4       MR. MARCUS:  Good morning, your Honor, Ari Marcus

00:00  5  from Marcus and Zelman representing the plaintiff.

6       THE COURT:  Good morning, Mr. Marcus.

7       MR. BAUCHNER:  Good morning, Joshua Bauchner of

8  Ansell, Grimm and Aaron on behalf of the defendants.

9       THE COURT:  Good morning, Mr. Bauchner.

00:00  10       So, this is your motion to dismiss, Mr. Bauchner?

11       MR. BAUCHNER:  Yes, sir.

12       THE COURT:  Do you wish to be heard?

13       MR. BAUCHNER:  I came all the way from New York City

14  for this hearing.

00:00  15       THE COURT:  Might as well.

16       MR. BAUCHNER:  Thank you.  And I'm confident the

17  Court's read the papers so I'll be brief.

18       THE COURT:  I have.

19       MR. BAUCHNER:  Your Honor, this whole case is about

00:00  20  one single unanswered call, and we put the emphasis on single

21  and unanswered.  Every case plaintiff relies on to establish a

22  concrete injury under the recent *Spokeo* case from the United

23  States Supreme Court is distinguishable, and critically

24  distinguishable on that basis alone.

00:01  25       Those cases involved 17 auto-dialed calls, 31

1   auto-dialed calls; cases where the plaintiffs tried to contact

2   the maker of the call, begged to be taken off the list and

3   were ignored.  We have one single unanswered call here, your

4   Honor, it's critical.

00:01    5          To try the cure that critical defect, plaintiff

6   claims that injuries sustained by auto-dialed calls are

7   inherent and self-evident.  But your Honor, that is exactly

8   the type of argument that the Supreme Court rejected in

9   *Spokeo,* where it said and I'm quoting, "Congress' role in

00:01   10   identifying and elevating intangible harm does not mean that a

11   plaintiff automatically satisfies the injury-in-fact

12   requirement whenever a statute grants a person a statutory

13   right and purports to authorize that person to sue to

14   vindicate that right."

00:02   15          Here that's exactly what happened.  The call was

16   allegedly made I believe on July 25th, and three days later we

17   have a class action complaint as a result of again one single

18   unanswered phone call.

19          And critically, your Honor, plaintiff doesn't allege

00:02   20   any concrete harm, any actual harm as required by *Spokeo*

21   resulting from that call.  Plaintiff doesn't allege she

22   answered the call, we know she didn't.  There was no intrusion

23   upon her privacy as a result of that.  She doesn't claim that

24   it deleted her battery, she doesn't claim it somehow took her

00:02   25   away from other phone calls, like the fax machine cases where

1    the fax machine's in use others can't use that fax.  She

2    doesn't claim that she spent any time answering the call, and

3    her reliance on other putative class members, your Honor, who

4    may have suffered harm, who may have had their minutes

00:02    5    depleted, doesn't work because the Supreme Court also tells us

6    that a plaintiff who seeks to serve as a class representative

7    can't establish her standing by relying on absentee class

8    members.

9            So we're left with a plaintiff here, your Honor,

00:03    10   whose concrete injury is a single unanswered phone call, and

11   that just is insufficient to establish standing under Article

12   III of the Constitution, your Honor.  And every case, again,

13   cited by plaintiff is critically distinct on that basis.  This

14   is simply an attempt to manufacture a class action, your

00:03    15   Honor.  That's why two days after the unanswered phone call

16   the complaint was filed.  No effort was made by her whatsoever

17   to contact us.

18           And critical, your Honor, in the Roma declaration we

19   submitted with our reply, we certify that not a single other

00:03    20   alleged recipient of these calls called to complain.  Or

21   otherwise we concede sure there's --

22           THE COURT:  I don't know how I get into that

23   certification on a motion to dismiss, however.

24           MR. BAUCHNER:  Your Honor, it's a 12(b)(1), and on a

00:03    25   12(b)(1) you can consider --

1          THE COURT:  Oh, on a jurisdiction issue.

2          MR. BAUCHNER:  Absolutely.  It's a Rule 12(b)(1)

3     application here, your Honor.  We cited to the case law and

4     the standard of review, and the Court is absolutely entitled

00:04   5     to not only consider affidavits and other evidence, but the

6     Court further, your Honor, unlike on a 12(b)(6) needn't accept

7     any of plaintiff's allegations as true.

8          THE COURT:  All right.

9          MR. BAUCHNER:  And that actually, your Honor, we set

00:04  10     forth in our opening papers --

11          THE COURT:  But if I have the issue on a motion to

12     dismiss back based on jurisdiction, I always give the

13     plaintiff an opportunity to do discovery on it, and to, you

14     know, take depositions to see if the certifications are

00:04  15     correct.

16          MR. BAUCHNER:  Your Honor, I don't -- I don't

17     dispute that and I certainly understand it, however, here

18     plaintiffs already amended their complaint once.  They've

19     already sought to correct the defects in their original

00:04  20     complaint, which I presume they've acknowledged otherwise they

21     wouldn't have amended.  No matter what discovery they could

22     do, your Honor, they're not going to be able to find that

23     plaintiff here received more than one unanswered phone call,

24     and that defect is alone.

00:05  25          Even again if they find that others might have

1 received these calls and that others might have answered the

2 calls, that's insufficient, because those others in that

3 putative class, they don't serve to satisfy plaintiff's

4 standing.  So no amount of discovery, your Honor, is going to

00:05   5 change the fact that plaintiff only received one unanswered

6 phone call, which does not amount to concrete harm.

7         THE COURT:  But you were talking about a different

8 fact, sir.  You brought up that -- you cited the certification

9 saying that no other person complained about the calls; that's

00:05  10 the assertion that I was making reference to, like really.

11 The one unanswered call, that's a different fact that we're

12 dealing with, and I believe that's set forth in the complaint.

13         MR. BAUCHNER:  I understand, your Honor, I recognize

14 the two different issues.  My point is simply that there were

00:05  15 no other complaints and they can have discovery on that, but

16 even if they take discovery on it that it's still not going to

17 endow plaintiff with standing.

18         THE COURT:  Do you have any other issues?

19         MR. BAUCHNER:  Yes, there's a second -- the other

00:06  20 big issue, your Honor, is the offer of judgment.

21         THE COURT:  So the *Campbell* issue.

22         MR. BAUCHNER:  The *Campbell* issue, your Honor,

23 exactly.  This case is distinct from every single case

24 plaintiff cites, because here the offer was made and the

00:06  25 payment was not only tendered, it was received.  And that is

1    the critical linchpin in all of the cases where the plaintiff

2    actually receives the funds; that ends it, there's no case or

3    controversy.

4           Now, she makes an argument, your Honor, that it was

00:06   5    a different credit card, but she attested on her membership

6    agreement it was her card.  She used the card for her gym

7    membership, she somehow in our declaration says --

8           THE COURT:  Please give me the timing of that.

9           MR. BAUCHNER:  When the funds were refunded, your

00:06   10   Honor? March.

11          THE COURT:  Because I'm trying to figure out when

12   the refund was made; was it before the suit or after the suit?

13          MR. BAUCHNER:  After the suit in conjunction with

14   our offer of judgment, your Honor.  I believe the refund was

00:06   15   made in March of this year.  And plaintiff kept those funds

16   the entire time until we filed our original motion to dismiss,

17   at which point she then tried to return the funds, but months

18   and months later.  But the fact of the matter was in that

19   interim, she actually received the funds, they were refunded

00:07   20   to her credit card.

21          And all of the courts, including the majority in

22   *Campbell*, have said that the critical linchpin in assessing

23   the offer of judgment, is the offer, tender and receipt of

24   funds.  Here, the funds were actually received, and three

00:07   25   months later, to try to save her class action, she decided to

1   write a check back for those funds.  But they were already

2   received, your Honor, and she can't uno that critical fact.

3         THE COURT:  So, when you issue a credit on a credit

4   card, the credit card holder doesn't have to do anything, you

00:07   5   just sent in a payment to her credit card company; is that

6   what happened?

7         MR. BAUCHNER:  The credit -- we had the refund -- I

8   guess it's not a refund.  We had the tender made on to her

9   credit card, and it actually said WOW Tender of Judgment.  So

00:08   10   on her bill, it would have said WOW Tender of Judgment,

11   $1,501.  Completely transparent to her.  And we submitted some

12   of the documentation to substantiate the transaction how it

13   was made, and the funds were kept.

14         Now, your Honor --

00:08   15         THE COURT:  I understand the argument.

16         MR. BAUCHNER:  Okay.

17         THE COURT:  Do you have any others?

18         MR. BAUCHNER:  That's all, your Honor.  Thank you.

19         THE COURT:  Mr...

00:08   20         MR. MARCUS:  Marcus.

21         THE COURT:  Marcus.  I'm sorry.

22         MR. MARCUS:  That's okay, your Honor.

23         THE COURT:  You're here so often, I should remember.

24         MR. MARCUS:  I will be brief as well.

00:08   25         THE COURT:  Can you just go into the *Spokeo* analysis

1    for me, please?

2           MR. MARCUS:  The *Spokeo* analysis first, yes, that's

3    fine, your Honor.  I just want to point out one point.  In

4    *Spokeo* the court did not state that the plaintiff there had no

5    standing or didn't have a concreted injury to confer standing,

6    the court actually remanded it back to Ninth Circuit.

7           And the reason being that they said that they didn't

8    analyze it correctly -- it was actually an 8-0 decision based

9    on principle, even though 6-2, the two dissenters said that

10   the Supreme Court should lend it to the next step, and how the

11   plaintiff here does have standing.  So there was no -- it

12   wasn't reversed based on the plaintiff not having standing

13   there.

14          But to move forward just on it, *Spokeo* didn't teach

15   us much that we already didn't know; we knew you needed

16   standing under Article III to be in federal court.  What

17   *Spokeo* mentioned is that the analysis you should look at is

18   whether the plaintiff had a concrete and particularized

19   injury.  And in defining what a concrete injury is, the

20   Supreme Court mentioned three points:  One, all you need is an

21   injury based on a risk of harm; two, you don't need a tangible

22   injury, but -- and I quote:  "Intangible injuries can

23   nevertheless be concrete; and number three, to evaluate

24   intangible harms, courts should look at both the history and

25   judgment of Congress when deciding whether --

1          THE COURT:  So, do you agree that there was only one

2   call made to your client?

3          MR. MARCUS:  I agree that my client has represented

4   to us that she only received one call.  I don't know if

00:10   5   there's previous calls beyond -- and the issue of the amount

6   of calls goes towards damage, it doesn't go toward standing.

7   The Supreme Court stated you needed a concrete injury.  And

8   whether that injury is de minimus, it's small, that's all you

9   need.

00:10   10          So whether it's one call, that will go towards the

11   damage.  If you have a thousand calls or one call, it doesn't

12   make a difference.  If it's a harm, if the phone call itself

13   is a harm, a concrete harm that Congress intended to confer

14   standing on to, which Congress did here, then you have

00:10   15   standing.

16          In fact --

17          THE COURT:  Well, if you look at the TCPA, it talks

18   about prevention of annoying and repeated telemarketing calls.

19   I'm just reading out of the ABCs of the TCPA by Mark Ellis,

00:11   20   but within that article they set forth the issues that were

21   trying to be addressed, and they talk about it in terms of

22   repeated and annoying.  So, if there's only one it's not

23   repeated; and annoying isn't usually -- I wouldn't associate

24   it with one call.  It seems to me you get annoyed when you get

00:11   25   a number of calls.

1          MR. MARCUS:  Well, that's true, your Honor, but the

2     statute's not reading where you have to have more than one

3     call to have a violation.  Any amount of calls would give you

4     a violation of the Act.  And consumers today are getting a

00:11   5     bunch of calls from everywhere, so you have to add them up.

6     And if companies can use machines to call you and constantly

7     call you, that's exactly what Congress was intending to

8     protect.

9          And just because the plaintiff here sued after the

00:12   10    first call and not waited until five or six or 10 or 12 calls

11    doesn't make a difference, all it goes toward is damage.  It's

12    a statutory damage you can get per call.  Plaintiff could have

13    waited to 20 or 30 calls and then we would have got the

14    argument from defendant that she didn't mitigate her damage,

00:12   15    she should have sued right away right when she knew it was a

16    violation of the Act.

17         And I just want to point out pre-*Spokeo* the Supreme

18    Court dealt with this issue under the TCPA twice.  Pre-*Spokeo*

19    they had two TCPA decisions in front of them; the first being

00:12   20    in 2012, *Mims v. Arrow Financial*, and there they dealt with

21    the issue of whether you have -- whether a consumer can sue in

22    federal court under the TCPA.  And Congress answered -- I mean

23    the Supreme Court answered in the affirmative.  And there

24    obviously they dealt with the issue of whether a plaintiff is

00:12   25    allowed to sue in federal court.  It's something they were

1   thinking of.

2          Now, defendant can argue well, 2012 was pre-*Spokeo*,

3   they weren't dealing with the issue of standing.  They also

4   recently in the *Campbell-Ewald* case, the *Campbell* case that

00:13   5   defendant mentioned for a different reason, dealt with a TCPA

6   case, one text message, one text message.  And it would be

7   hard to argue the Supreme Court didn't have *Spokeo* in mind

8   being that they heard it right after *Campbell-Ewald*, they knew

9   they were dealing with that.

00:13   10          And in that decision when they decided an offer of

11   judgment does not moot a class, Justice Roberts noted:  That

12   the court's agreement that a receipt of an unwanted telephone

13   call was undisputedly an injury in fact.  And I quote:  "All

14   agree that at the time Gomez filed suit he had a personal

00:13   15   stake in the litigation; in his complaint Gomez alleged that

16   he suffered an injury in fact when he received an unauthorized

17   text message from Campbell."

18          Again, one text message; they knew about *Spokeo*,

19   they were dealing with *Spokeo* at the same time, and they

00:13   20   easily could have said that the plaintiff doesn't have

21   standing there, but they didn't, because they understood the

22   plaintiff did have standing.

23          Now, I'd just like to talk about the cases after

24   *Spokeo* now, all the cases which dealt with this issue of

00:14   25   getting unwanted phone calls.  First being *Booth v. Appstack*,

1   I'm just going to quickly go over three of them, because

2   there's a lot of them in our motion because we have a lot of

3   cases to support our position.  The court held that:  While

4   the injury in *Spokeo* is arguably procedural and thus not

5   concrete, the TCPA is an injury that Congress agrees is

6   sufficiently concrete to confer standing.  No mention of the

7   amount of calls you need to confer standing.  The TCPA itself

8   is an injury that Congress agrees is sufficiently concrete to

9   confer standing.

10          Second case, *Rogers v. Capital One;* the court held

11  that by merely alleging that calls were made to a personal

12  cellphone, plaintiff has suffered particularized injuries that

13  were suffered to support standing.  Again, no mention of the

14  amount of calls.  There in that case plaintiff didn't even

15  allege a harm and the court said that's sufficient; you don't

16  have to allege a harm because the TCPA itself is self-evident.

17          The third case, *Mey v. Got Warranty*, held that

18  plaintiff has standing to sue since the harm caused by

19  unwanted calls are self-evident.  No mention of the amount of

20  calls you need.

21          Now, defendant brings up two cases to support their

22  position, both of them are clearly inapposite.  It doesn't

23  mention the facts in their brief about those cases because

24  it's clear that they have no relevance here.  The first being

25  *Stoops v. Wells Fargo*, which I'm sure your Honor is aware of.

1   That is a case where a plaintiff admitted that she purchased

2   cellphones inviting calls with the hope of getting calls so

3   she can sue under the TCPA; she admitted that that was her

4   business.  The court held there that obviously there was no

00:15  5   harm, she wanted these calls, this was her business.

6         THE COURT:  There's an exception to standing where

7   you manufacture the claim or create the claim in the *Stoops*

8   case --

9         MR. MARCUS:  Correct.

00:16  10        THE COURT:  And the court found that.

11        MR. MARCUS:  That's right.

12        THE COURT:  So I think that's factually different

13   than what we're looking at here.

14        MR. MARCUS:  I agree, that's exactly my point, that

00:16  15   this is the only case that defendant has to support their

16   position of *Stoops*, which is not relevant to our case.  The

17   second case which they bring up in their reply brief for the

18   first time is the *Sartin v. EKF Diagnostics*, that's a fax

19   case, TCPA fax case.  There the plaintiff did not allege any

00:16  20   harm, the complaint was written before *Spokeo*, and there the

21   court did not state that plaintiff did not have standing, the

22   court stated that there was a procedural issue because the

23   plaintiff didn't allege harm, so the court granted plaintiff

24   leave to amend the complaint and alleged harm.  So again, not

00:16  25   relevant to our case.

1          Now, our last point on *Spokeo* is that this is not a

2    risk of harm, this is not an intangible injury, these are

3    tangible real injuries.  And I'm not sure why defendant is

4    stating we didn't allege this in the complaint because we did

00:17     5    allege it.  And while some of them may be minor and may be

6    small, that's all you need for standing in federal court.

7    Like nuisance, like lost use of property, like depletion of

8    battery life; these are small injuries, all mentioned in the

9    three cases I spoke about post-*Spokeo* which held were enough

00:17    10    to confer standing.  So defendant is asking this Court to be

11    the one outlier, the one court post-*Spokeo* who decides that

12    plaintiffs don't have standing on a TCPA violation.

13          And I'd just like to address the *Campbell-Ewald*

14    quickly --

00:17    15          THE COURT:  Okay.

16          MR. MARCUS:  The facts of the case are as follows.

17    He filed a complaint, defendant made an offer of judgment,

18    Rule 68 offer of judgment; our case was stayed pending the

19    *Campbell-Ewald* decision.  The Supreme Court decided that a

00:17    20    defendant cannot moot a class by making an offer of judgment.

21          Thereafter defendant notified us that they deposited

22    money into this credit card.  Plaintiff didn't know about it,

23    I didn't know about it, the reason being is because it's not

24    her credit card.  And we told defendant this and they still

00:18    25    filed this motion, they know about this.  My office manager

1    has a credit card that has her name on it; it's not her credit

2    card.  Any money that is put into the credit card she would

3    never see, she would never see the benefit of, she doesn't see

4    the bills or anything like that.

00:18    5        Plaintiff here is an office manager of a dentist

6    office.  She was given a credit card for office expenses.  As

7    part of her perk for working there, her employer granted her a

8    gym membership.  She was the one who went to the gym, so she

9    used that credit card because she knew it would be billed to

00:18   10    her employer, she was granted permission to do that.

11        When the employer got a 1,501 credit on his credit

12    card, he was blown away.  He called Work Out World; Work Out

13    World said I don't know what this this is.  He called his

14    credit card; his credit card company told him we can't do

00:18   15    anything, wait until it hits your bank account and then write

16    them a check, which is what the employer did.  Waited until

17    hit his bank account, took the check, went to his Work Out

18    World because when he called Work Out World he couldn't get

19    someone on the phone, when he finally got someone on the phone

00:19   20    they said I don't know what this is.

21        So to argue that the plaintiff received the money is

22    just incorrect; she didn't even know about it until I put her

23    on notice.  She never saw the benefit of it; didn't say her

24    name, 1,501 to Noreen Sussino, it just say WOW Tender of

00:19   25    Judgment.

1          Now, for academic purposes I'd like to make the

2    argument that even if she did receive the money it's

3    irrelevant.  What *Campbell-Ewald* said, is that you can't make

4    an offer of judgment, it won't moot a class, every plaintiff

00:19     5    should be afforded the opportunity to do class discovery.

6    What the Supreme Court did not decide is what would happen if

7    the money was actually tendered and received.

8          The defendant stated earlier, which is incorrect,

9    that the Supreme Court said that all you need to do is tender

00:19     10   and have the money received; the Supreme Court did not say

11   that, they just said we're not answering that question because

12   it's not before us.  So it's a misrepresentation to say that's

13   what the Supreme Court stated.

14         Now, after that decision, defendants, using this

00:20    15   gamesmanship, decided that they're going to start doing that.

16   And the Ninth Circuit recently held in *Chen v. Allstate*, after

17   the plaintiff was given $20,000, held a would-be class

18   representative with a live claim of her own, must be accorded

19   a fair opportunity to show certification is warranted.  And

00:20    20   they dismissed defendant's motion to dismiss, and the case

21   moved forward.

22         In a more recent decision, South Chiropractic --

23   sorry.  *South Orange Chiropractic v. Cayan*, defendant did the

24   same thing; they paid money to the plaintiff, defendant filed

00:20    25   a motion to dismiss, which was denied.  They attempted to file

1    an interlocutory appeal, which was denied because the court

2    stated, and this is important, and I quote, "A defendant

3    cannot moot a proposed class action solely by paying off the

4    named plaintiff."  And concluded that because there was no

5    difference of opinions between the courts, there's no reason

6    to hear the appeal.  They didn't even hear the appeal.

7           Now, the only cases defendant brings, again, are not

8    factually similar to our case.  Two of them are individual

9    cases, no class action, no need to do class discovery; and the

10   third case was a case in which the plaintiff was granted an

11   opportunity to do class discovery, did class discovery, filed

12   their class cert motion which was denied, at which point

13   afterward the court said now if you offer an offer of judgment

14   we'll dismiss the case as being moot, because there is no more

15   class discovery to be done.

16          So again, the defendant on this argument is asking

17   the Court to ignore the facts that plaintiff never received

18   the money; and even if the plaintiff received the money to be

19   the one outlier case to decide to moot a case based off of a

20   Rule 68 offer.  And for those reasons we ask the Court to

21   dismiss the defendant's motion.

22          THE COURT:  Okay, thank you.

23          Do you wish to reply briefly?

24          MR. BAUCHNER:  Very briefly, your Honor.  First, I

25   don't like to be accused of misrepresentation; I draw the

1    Court's attention to the *Campbell-Ewald* case at 671, where the

2    court actually cited to three cases, *San Pablo*, *San Mateo* and

3    *Little*, where it distinguished instances where the plaintiff

4    actually received the funds and found that satisfied Rule 68.

00:22    5    So it's not a misrepresentation to say the Supreme Court drew

6    that distinction.

7         Secondly, your Honor, everything counsel said with

8    respect to what the employer may have done is not in the

9    record before this Court.  There's no certification or

00:22    10   declaration from the employer, that's all counsel's hyperbole

11   and it's not before the Court.  We know the money went into

12   the account; we know plaintiff signed a membership agreement

13   that said it's my credit card, perhaps under false pretenses

14   but that's what she signed, and we refunded money to that

00:22    15   account.  To the assertion it's only for office expenses is

16   belied by the fact that it's apparently also used by her for a

17   personal gym membership.

18        And finally, your Honor, I think you hit it on the

19   head, repeated and annoying calls.  The argument from counsel

00:22    20   that he didn't look at her records to see if there's any

21   additional calls I think is a little specious.  There's an

22   amended complaint filed; earlier if they were trying to cure

23   the injury issue in the original complaint they would have

24   looked at the record, I'm sure they did, there were no more

00:23    25   calls.

1          There was one call, your Honor, that is not repeated

2     and that is not annoying.  If there were additional calls that

3     they could have waited and the rest, that's nonsense.  One

4     unanswered phone call, your Honor, that is not a concrete

00:23     5     injury.

6          THE COURT:  Okay, thank you.

7          MR. MARCUS:  Can I just make one quick point?

8          THE COURT:  You may.

9          MR. MARCUS:  I'm conceding there's one call, that's

00:23     10    fine.  And repeated and annoying would go towards whether

11    there's a TCPA violation, it wouldn't go towards standing.  If

12    defendant wants to argue there's no violation of TCPA unless

13    you have repeated and annoying they can make that argument,

14    that shouldn't go toward the standing argument.

00:23     15         THE COURT:  All right.  So, a motion to dismiss for

16    want of standing is properly brought pursuant to 12(b)(1).

17    It's a jurisdictional issue.  *Constitutional Party*, 777 F.3d

18    347, 357.  Generally, the court must accept as true all

19    material facts or allegations in the complaint, and construe

00:24     20    the facts in favor of the non-moving party.  That's *Storino v.*

21    *Point Pleasant*, 322 F.3d 293.  Plaintiff always bear the

22    burden of establishing standing.  Generally, standing comes

23    under cases in controversy as in the federal Constitution, and

24    the doctrine of standing gives meaning to these constitutional

00:24     25    limits by identifying those disputes which are appropriately

1    resolved in the judicial process.  That's *Lujan*, 504 U.S. 555.

2    To establish standing you usually need an injury in fact;

3    causal connection between the injury and the conduct

4    complained of, and the likelihood that the injury will be

5    redressed by a favorable decision.  That's *Lujan* again at 561.

6    Generally, the injury, to be sufficient, must be concrete and

7    particularized.

8           And that brings us to the *Spokeo* case, and it's a

9    decision by Judge Alito.  So within that *Spokeo* case, Justice

10   Alito identified the terms concrete and particularized, upon

11   which the plaintiff must show in order to have a case or

12   controversy.  And for the injury to be particularized, it must

13   affect the plaintiff in a personal and individual way.  And

14   then he indicates that the injury must also be concrete;

15   concrete injury must be de facto, that is, it must actually --

16   it says:  When we have used the adjective concrete, Judge

17   Alito writes, we have meant to convey the usual meaning of

18   that term, real and not abstract.  And he cites to Webster's

19   Dictionary.  And then he indicates that concreteness is

20   different than particularization, and that both needed to be

21   shown in order to have standing.  Concrete is not always

22   synonymous with tangible, but Alito says intangible injuries

23   can nevertheless be concrete.  And then there's some

24   explanation of that, and he does add in there that:  In

25   addition, because Congress is well positioned to identify

1    intangible harms that meet minimum Article III requirements,

2    its judgment is also instructive and important.  Thus, in

3    *Spokeo*, Alito continues, Congress may elevate the status of

4    legally cognizable injuries, concrete de facto injuries that

5    were previously inadequate in law, and there he's citing to

6    *Lujan* at page 578.

7         And in all these TCPA cases there's this underlying

8    thought that Congress has passed the statute, and therefore

9    they're identifying a concrete injury that has occurred to the

10   person.  So, with regard to that, I decided that I should look

11   at the Telephone Consumer Protection Act to see if this is the

12   type of case that Congress was trying to protect people

13   against.  And here, it seems to be admitted by Mr. Marcus that

14   there was only one telephone call, and it lasted -- I believe

15   it was a minute and a few seconds.  And, at any rate, when

16   Congress was enacting the Telephone Consumer Protection Act,

17   it had four purposes:  (1) minimizing random solicitation

18   calls which tied up private and business phone lines and fax

19   machines; (2) the prevention of annoying and repeated

20   telemarketing calls and blast faxes, amounting to invasion of

21   privacy; (3) elimination of the imposition of nonconsensual

22   calls to recipients of calls and faxes who have no prior

23   relationship with the advertiser; (4) debt collection and

24   creditor calls initially were not considered to fall within

25   the ambit of the TCPA, which was directed to advertisers and

1    solicitors.  So, that's another purpose I take it.  But

2    generally, if you look at those purposes, when it says "tied

3    up private and business phones", this means if the phone is

4    tied up, and that is usually not the case on a one-minute

5    call.

6           Secondly, the prevention of annoying and repeated

7    telemarketing calls, seems to require that there needs to be

8    some type of pattern or repeatedness to the telephone calls,

9    so that does not mean once; there's three, five, seven,

10   something like that.  We've all been subject to those calls

11   once or twice in our past.  It's those types of telephone call

12   patterns that Congress was looking at.

13          The elimination of nonconsensual calls to recipients

14   -- and it's in the plural there -- of the calls and faxes, who

15   had no prior relationship; so that seems to indicate that

16   Congress was thinking about more than one call.  And then it

17   gets into the debt collectors and creditor callers.

18          So generally, when you look at concreteness -- and

19   concreteness, as I had indicated, that is, it must actually

20   exist; we have used the word concrete, we have meant to convey

21   the usual meaning of the term -- real and not abstract.  And

22   this one-minute call -- and I know plaintiff talks about the

23   loss of battery power and things of that nature; but that

24   seems de minimus to me.  There was a time when this statute

25   was enacted where parties paid for calls they received, but I

1   don't think that that's at issue in the complaint.  And most

2   of the calling plans or telephone cellphone plans, now you can

3   get unlimited amount of calls that you pay for, and there

4   doesn't seem to be that allegation in the complaint that I

00:32   5   could see.

6           Paragraph 18 of the complaint says:  On or about

7   July 28th, 2015, plaintiff received a telephone call on her

8   cellular phone.  And that's really the full explanation.

9   There's no pattern related to it, there's no repeatedness,

00:32   10   there's no annoying -- it wasn't really that annoying.

11   Paragraph 20 does say there was a prerecorded message, and it

12   was followed by a six-second pause and lasted one minute and

13   two seconds in total.  So, it doesn't seem as if it's a

14   significant period of time, and it doesn't seem to be annoying

00:33   15   in the sense that I think of that word.

16           So, with regard to the *Spokeo* case, it's my view

17   that, as explained by Judge Alito in that case, the

18   concreteness is not really set forth within the complaint.

19   Any injury seems to be rather abstract; a loss of some de

00:33   20   minimus battery power over a minute, doesn't seem to be

21   significant in my mind.

22           And I've looked at these other cases, I should just

23   point that out.  The first case the plaintiff cited to was

24   *Booth v. Appstack*, and there the court wrote:  The TCPA

00:34   25   violations alleged here, if proven, require plaintiffs to

1  waste time answering or otherwise addressing widespread

2  robo-calls.  Then it adds:  The use of the auto dialer, which

3  allegedly enabled defendants to make massive amounts of calls

4  at low cost and in a short period of time amplifies the

5  severity of this injury; such injury is sufficiently concrete

6  to confer standing.  And that's *Booth* at 2016 WL 3030256 at

7  page 5.  To me, this case is different; it's one call, it's

8  not a massive amount of calls, it's not widespread robo-calls.

9  So, I don't see how the *Booth* case is analogous to the facts

10  that we have here.

11        In the *Rogers* case, 2016 WL 3162592, the plaintiffs

12  allege that the calls were made to their personal cellphone

13  numbers; they have suffered particularized injury because

14  their cellphone lines were unavailable for a legitimate use

15  during the unwanted calls.  Again, it talks about calls, so

16  there was always more than one.  So it had this element which

17  Congress was talking about -- repeated and annoying.

18        But then in the *Johnson* case, the court talked about

19  how any harassment caused by these calls was actionable.  And

20  again, it was calls, and it was harassment; I don't see any

21  harassment in the one call that would have any legal impact

22  anyway.

23        Then in *Mey v. Got Warranty*, the court denied

24  defendant's motion to dismiss because there were intangible

25  injuries, and they cite to limited cellphone minutes.  But the

1    limited cellphone minutes seems to me to go to those old

2    calling plans where you had to pay for each call, even if you

3    received it.  And to me, the depletion of battery life for a

4    minute doesn't amount to a type of injury that we would call

00:37    5    concrete and particularized.

6         So having reviewed those cases as well, the Court

7    finds that the defendant's motion to dismiss for lack of

8    standing is granted.

9         With regard to the second motion, I don't really

00:37    10   think I need to answer that having dismissed the complaint, so

11   I'll deny it as moot.  But I would say that if it were to go

12   forward, I would permit discovery on that motion.

13        You don't see any reason why I need to handle the

14   *Campbell* matter, do you?

00:38    15        MR. BAUCHNER:  No, your Honor, not in light of your

16   dismissal.

17        THE COURT:  Okay.  So for those reasons, the

18   defendant's motion to dismiss is granted.  Mr. Marcus had

19   indicated that he was stipulating that there was only one

00:38    20   call, so I don't see how I can allow an amendment at this

21   point, because it would be futile based on the rationale that

22   I had decided.  So, thank you for coming in.

23        MR. MARCUS:  Thank you, your Honor.

24        MR. BAUCHNER: Thank you, your Honor.

00:38    25        (Matter concluded.)

**$**

**$1,501** [1] - 8:11
**$20,000** [1] - 17:17

**/**

**/S** [1] - 1:24

**0**

**08608** [1] - 1:10

**1**

**1** [2] - 1:8, 22:17
**1,501** [2] - 16:11, 16:24
**10** [1] - 11:10
**12** [1] - 11:10
**12(b)(1** [3] - 4:24, 4:25, 5:2
**12(b)(1)** [1] - 20:16
**12(b)(6** [1] - 5:6
**15-5881** [1] - 1:5
**17** [1] - 2:25
**18** [1] - 24:6

**2**

**2** [1] - 22:19
**20** [2] - 11:13, 24:11
**2012** [2] - 11:20, 12:2
**2015** [1] - 24:7
**2016** [3] - 1:8, 25:6, 25:11
**25th** [1] - 3:16
**28** [1] - 1:23
**28th** [1] - 24:7
**293** [1] - 20:21

**3**

**3** [1] - 22:21
**30** [1] - 11:13
**3030256** [1] - 25:6
**31** [1] - 2:25
**3162592** [1] - 25:11
**322** [1] - 20:21
**347** [1] - 20:18
**357** [1] - 20:18

**4**

**4** [1] - 22:23

**402** [1] - 1:9

**5**

**5** [1] - 25:7
**504** [1] - 21:1
**555** [1] - 21:1
**561** [1] - 21:5
**578** [1] - 22:6

**6**

**6-2** [1] - 9:9
**671** [1] - 19:1
**68** [3] - 15:18, 18:20, 19:4

**7**

**753** [1] - 1:23
**777** [1] - 20:17

**8**

**8-0** [1] - 9:8
**856** [1] - 1:25
**889-4761** [1] - 1:25

**A**

**AARON** [1] - 1:17
**Aaron** [1] - 2:8
**ABCs** [1] - 10:19
**able** [1] - 5:22
**absentee** [1] - 4:7
**absolutely** [1] - 5:4
**Absolutely** [1] - 5:2
**abstract** [3] - 21:18, 23:21, 24:19
**academic** [1] - 17:1
**accept** [2] - 5:6, 20:18
**accorded** [1] - 17:18
**account** [4] - 16:15, 16:17, 19:12, 19:15
**accused** [1] - 18:25
**acknowledged** [1] - 5:20
**Act** [4] - 11:4, 11:16, 22:11, 22:16
**action** [5] - 3:17, 4:14, 7:25, 18:3, 18:9
**actionable** [1] - 25:19
**actual** [1] - 3:20
**add** [2] - 11:5, 21:24
**addition** [1] - 21:25
**additional** [2] - 19:21,

20:2
**address** [1] - 15:13
**addressed** [1] - 10:21
**addressing** [1] - 25:1
**adds** [1] - 25:2
**adjective** [1] - 21:16
**admitted** [3] - 14:1, 14:3, 22:13
**advertiser** [1] - 22:23
**advertisers** [1] - 22:25
**affect** [1] - 21:13
**affidavits** [1] - 5:5
**afforded** [1] - 17:5
**agree** [4] - 10:1, 10:3, 12:14, 14:14
**agreement** [3] - 7:6, 12:12, 19:12
**agrees** [2] - 13:5, 13:8
**al** [1] - 1:6
**Alito** [6] - 21:9, 21:10, 21:17, 21:22, 22:3, 24:17
**allegation** [1] - 24:4
**allegations** [2] - 5:7, 20:19
**allege** [9] - 3:19, 3:21, 13:15, 13:16, 14:19, 14:23, 15:4, 15:5, 25:12
**alleged** [4] - 4:20, 12:15, 14:24, 24:25
**allegedly** [2] - 3:16, 25:3
**alleging** [1] - 13:11
**allow** [1] - 26:20
**allowed** [1] - 11:25
**Allstate** [1] - 17:16
**alone** [2] - 2:24, 5:24
**ambit** [1] - 22:25
**amend** [1] - 14:24
**amended** [3] - 5:18, 5:21, 19:22
**amendment** [1] - 26:20
**amount** [10] - 6:4, 6:6, 10:5, 11:3, 13:7, 13:14, 13:19, 24:3, 25:8, 26:4
**amounting** [1] - 22:20
**amounts** [1] - 25:3
**amplifies** [1] - 25:4
**analogous** [1] - 25:9
**analysis** [3] - 8:25, 9:2, 9:17
**analyze** [1] - 9:8
**annoyed** [1] - 10:24
**annoying** [13] - 10:18, 10:22, 10:23, 19:19, 20:2, 20:10, 20:13, 22:19, 23:6, 24:10,

24:14, 25:17
**Ansell** [1] - 2:8
**ANSELL** [1] - 1:17
**answer** [1] - 26:10
**answered** [4] - 3:22, 6:1, 11:22, 11:23
**answering** [3] - 4:2, 17:11, 25:1
**anyway** [1] - 25:22
**appeal** [3] - 18:1, 18:6
**appearances** [1] - 2:2
**application** [1] - 5:3
**appropriately** [1] - 20:25
**Appstack** [2] - 12:25, 24:24
**arguably** [1] - 13:4
**argue** [4] - 12:2, 12:7, 16:21, 20:12
**argument** [9] - 3:8, 7:4, 8:15, 11:14, 17:2, 18:16, 19:19, 20:13, 20:14
**ARI** [1] - 1:16
**Ari** [1] - 2:4
**Arrow** [1] - 11:20
**article** [1] - 10:20
**Article** [3] - 4:11, 9:16, 22:1
**assertion** [2] - 6:10, 19:15
**assessing** [1] - 7:22
**associate** [1] - 10:23
**attempt** [1] - 4:14
**attempted** [1] - 17:25
**attention** [1] - 19:1
**attested** [1] - 7:5
**AUGUST** [1] - 1:8
**authorize** [1] - 3:13
**auto** [4] - 2:25, 3:1, 3:6, 25:2
**auto-dialed** [3] - 2:25, 3:1, 3:6
**automatically** [1] - 3:11
**aware** [1] - 13:25

**B**

**bank** [2] - 16:15, 16:17
**based** [6] - 5:12, 9:8, 9:12, 9:21, 18:19, 26:21
**basis** [2] - 2:24, 4:13
**battery** [5] - 3:24, 15:8, 23:23, 24:20, 26:3
**Bauchner** [3] - 2:7, 2:9, 2:10

**BAUCHNER** [21] - 1:18, 2:7, 2:11, 2:13, 2:16, 2:19, 4:24, 5:2, 5:9, 5:16, 6:13, 6:19, 6:22, 7:9, 7:13, 8:7, 8:16, 8:18, 18:24, 26:15, 26:24
**bear** [1] - 20:21
**begged** [1] - 3:2
**behalf** [1] - 2:8
**belied** [1] - 19:16
**benefit** [2] - 16:3, 16:23
**between** [2] - 18:5, 21:3
**beyond** [1] - 10:5
**big** [1] - 6:20
**bill** [1] - 8:10
**billed** [1] - 16:9
**bills** [1] - 16:4
**blast** [1] - 22:20
**blown** [1] - 16:12
**Booth** [4] - 12:25, 24:24, 25:6, 25:9
**brief** [4] - 2:17, 8:24, 13:23, 14:17
**briefly** [2] - 18:23, 18:24
**bring** [1] - 14:17
**brings** [3] - 13:21, 18:7, 21:8
**brought** [2] - 6:8, 20:16
**bunch** [1] - 11:5
**burden** [1] - 20:22
**business** [4] - 14:4, 14:5, 22:18, 23:3
**BY** [2] - 1:16, 1:18

**C**

**C.S.R.** [1] - 1:24
**callers** [1] - 23:17
**Campbell** [12] - 6:21, 6:22, 7:22, 12:4, 12:8, 12:17, 15:13, 15:19, 17:3, 19:1, 26:14
**Campbell-Ewald** [6] - 12:4, 12:8, 15:13, 15:19, 17:3, 19:1
**cannot** [2] - 15:20, 18:3
**Capital** [1] - 13:10
**card** [19] - 7:5, 7:6, 7:20, 8:4, 8:5, 8:9, 15:22, 15:24, 16:1, 16:2, 16:6, 16:9, 16:12, 16:14, 19:13

**case** [44] - 2:19, 2:21, 2:22, 4:12, 5:3, 6:23, 7:2, 12:4, 12:6, 13:10, 13:14, 13:17, 14:1, 14:8, 14:15, 14:16, 14:17, 14:19, 14:25, 15:16, 15:18, 17:20, 18:8, 18:10, 18:14, 18:19, 19:1, 21:8, 21:9, 21:11, 22:12, 23:4, 24:16, 24:17, 24:23, 25:7, 25:9, 25:11, 25:18
**cases** [17] - 2:25, 3:1, 3:25, 7:1, 12:23, 12:24, 13:3, 13:21, 13:23, 15:9, 18:7, 18:9, 19:2, 20:23, 22:7, 24:22, 26:6
**causal** [1] - 21:3
**caused** [2] - 13:18, 25:19
**Cayan** [1] - 17:23
**cellphone** [6] - 13:12, 24:2, 25:12, 25:14, 25:25, 26:1
**cellphones** [1] - 14:2
**cellular** [1] - 24:8
**cert** [1] - 18:12
**certainly** [1] - 5:17
**certification** [4] - 4:23, 6:8, 17:19, 19:9
**certifications** [1] - 5:14
**Certified** [1] - 1:23
**certify** [1] - 4:19
**change** [1] - 6:5
**check** [3] - 8:1, 16:16, 16:17
**Chen** [1] - 17:16
**Chiropractic** [2] - 17:22, 17:23
**Circuit** [2] - 9:6, 17:16
**cite** [1] - 25:25
**cited** [5] - 4:13, 5:3, 6:8, 19:2, 24:23
**cites** [2] - 6:24, 21:18
**citing** [1] - 22:5
**City** [1] - 2:13
**CIVIL** [1] - 1:5
**claim** [6] - 3:23, 3:24, 4:2, 14:7, 17:18
**claims** [1] - 3:6
**CLARKSON** [1] - 1:9
**class** [19] - 3:17, 4:3, 4:6, 4:7, 4:14, 6:3, 7:25, 12:11, 15:20, 17:4, 17:5, 17:17, 18:3, 18:9, 18:11, 18:12, 18:15

**clear** [1] - 13:24
**clearly** [1] - 13:22
**client** [2] - 10:2, 10:3
**cognizable** [1] - 22:4
**collection** [1] - 22:23
**collectors** [1] - 23:17
**coming** [1] - 26:22
**companies** [1] - 11:6
**company** [2] - 8:5, 16:14
**complain** [1] - 4:20
**complained** [2] - 6:9, 21:4
**complaint** [18] - 3:17, 4:16, 5:18, 5:20, 6:12, 12:15, 14:20, 14:24, 15:4, 15:17, 19:22, 19:23, 20:19, 24:1, 24:4, 24:6, 24:18, 26:10
**complaints** [1] - 6:15
**Completely** [1] - 8:11
**concede** [1] - 4:21
**conceding** [1] - 20:9
**concluded** [2] - 18:4, 26:25
**Concrete** [1] - 21:21
**concrete** [24] - 2:22, 3:20, 4:10, 6:6, 9:18, 9:19, 9:23, 10:7, 10:13, 13:5, 13:6, 13:8, 20:4, 21:6, 21:10, 21:14, 21:15, 21:16, 21:23, 22:4, 22:9, 23:20, 25:5, 26:5
**concreted** [1] - 9:5
**concreteness** [4] - 21:19, 23:18, 23:19, 24:18
**conduct** [1] - 21:3
**confer** [7] - 9:5, 10:13, 13:6, 13:7, 13:9, 15:10, 25:6
**confident** [1] - 2:16
**Congress** [15] - 9:25, 10:13, 10:14, 11:7, 11:22, 13:5, 13:8, 21:25, 22:3, 22:8, 22:12, 22:16, 23:12, 23:16, 25:17
**Congress'** [1] - 3:9
**conjunction** [1] - 7:13
**connection** [1] - 21:3
**consider** [2] - 4:25, 5:5
**considered** [1] - 22:24
**constantly** [1] - 11:6
**Constitution** [2] - 4:12, 20:23

**Constitutional** [1] - 20:17
**constitutional** [1] - 20:24
**construe** [1] - 20:19
**consumer** [1] - 11:21
**Consumer** [2] - 22:11, 22:16
**consumers** [1] - 11:4
**contact** [2] - 3:1, 4:17
**continues** [1] - 22:3
**controversy** [3] - 7:3, 20:23, 21:12
**convey** [1] - 21:17, 23:20
**correct** [3] - 1:23, 5:15, 5:19
**Correct** [1] - 14:9
**correctly** [1] - 9:8
**cost** [1] - 25:4
**counsel** [2] - 19:7, 19:19
**counsel's** [1] - 19:10
**Court** [23] - 2:23, 3:8, 4:5, 5:4, 5:6, 9:10, 9:20, 10:7, 11:18, 11:23, 12:7, 15:10, 15:19, 17:6, 17:9, 17:10, 17:13, 18:17, 18:20, 19:5, 19:9, 19:11, 26:6
**COURT** [35] - 1:1, 1:12, 2:1, 2:6, 2:9, 2:12, 2:15, 2:18, 4:22, 5:1, 5:8, 5:11, 6:7, 6:18, 6:21, 7:8, 7:11, 8:3, 8:15, 8:17, 8:19, 8:21, 8:23, 8:25, 10:1, 10:17, 14:6, 14:10, 14:12, 15:15, 18:22, 20:6, 20:8, 20:15, 26:17
**court** [22] - 9:4, 9:6, 9:16, 11:22, 11:25, 13:3, 13:10, 13:15, 14:4, 14:10, 14:21, 14:22, 14:23, 15:6, 15:11, 18:1, 18:13, 19:2, 20:18, 24:24, 25:18, 25:23
**court's** [1] - 12:12
**Court's** [2] - 2:17, 19:1
**COURTHOUSE** [1] - 1:9
**courts** [3] - 7:21, 9:24, 18:5
**create** [1] - 14:7
**credit** [20] - 7:5, 7:20, 8:3, 8:4, 8:5, 8:7, 8:9, 15:22, 15:24,

16:1, 16:2, 16:6, 16:9, 16:11, 16:14, 19:13
**creditor** [2] - 22:24, 23:17
**critical** [5] - 3:4, 3:5, 4:18, 7:1, 7:22, 8:2
**critically** [3] - 2:23, 3:19, 4:13
**cure** [2] - 3:5, 19:22

---

## D

**damage** [5] - 10:6, 10:11, 11:11, 11:12, 11:14
**days** [2] - 3:16, 4:15
**de** [5] - 10:8, 21:15, 22:4, 23:24, 24:19
**dealing** [4] - 6:12, 12:3, 12:9, 12:19
**dealt** [5] - 11:18, 11:20, 11:24, 12:5, 12:24
**debt** [2] - 22:23, 23:17
**decide** [2] - 17:6, 18:19
**decided** [6] - 7:25, 12:10, 15:19, 17:15, 22:10, 26:22
**decides** [1] - 15:11
**deciding** [1] - 9:25
**decision** [7] - 9:8, 12:10, 15:19, 17:14, 17:22, 21:5, 21:9
**decisions** [1] - 11:19
**declaration** [3] - 4:18, 7:7, 9:10
**defect** [2] - 3:5, 5:24
**defects** [1] - 5:19
**DEFENDANT** [1] - 1:18
**defendant** [18] - 11:14, 12:2, 12:5, 13:21, 14:15, 15:3, 15:10, 15:17, 15:20, 15:21, 15:24, 17:8, 17:23, 17:24, 18:2, 18:7, 18:16, 20:12
**defendant's** [5] - 17:20, 18:21, 25:24, 26:7, 26:18
**DEFENDANTS** [1] - 1:6
**defendants** [3] - 2:8, 17:14, 25:3
**defining** [1] - 9:19
**deleted** [1] - 3:24
**denied** [4] - 17:25,

18:1, 18:12, 25:23
**dentist** [1] - 16:5
**deny** [1] - 26:11
**depleted** [1] - 4:5
**depletion** [2] - 15:7, 26:3
**deposited** [1] - 15:21
**depositions** [1] - 5:14
**Diagnostics** [1] - 14:18
**dialed** [3] - 2:25, 3:1, 3:6
**dialer** [1] - 25:2
**Dictionary** [1] - 21:19
**difference** [3] - 10:12, 11:11, 18:5
**different** [8] - 6:7, 6:11, 6:14, 7:5, 12:5, 14:12, 21:20, 25:7
**directed** [1] - 22:25
**discovery** [11] - 5:13, 5:21, 6:4, 6:15, 6:16, 17:5, 18:9, 18:11, 18:15, 26:12
**DISMISS** [1] - 1:21
**dismiss** [12] - 2:10, 4:23, 5:12, 7:16, 17:20, 17:25, 18:14, 18:21, 20:15, 25:24, 26:7, 26:18
**dismissal** [1] - 26:16
**dismissed** [2] - 17:20, 26:10
**dispute** [1] - 5:17
**disputes** [1] - 20:25
**dissenters** [1] - 9:9
**distinct** [2] - 4:13, 6:23
**distinction** [1] - 19:6
**distinguishable** [2] - 2:23, 2:24
**distinguished** [1] - 19:3
**DISTRICT** [4] - 1:1, 1:1, 1:12, 1:13
**doctrine** [1] - 20:24
**documentation** [1] - 8:12
**done** [2] - 18:15, 19:8
**draw** [1] - 18:25
**drew** [1] - 19:5
**during** [1] - 25:15

---

## E

**easily** [1] - 12:20
**EAST** [1] - 1:9
**effort** [1] - 4:16
**EKF** [1] - 14:18

element [1] - 25:16
elevate [1] - 22:3
elevating [1] - 3:10
elimination [2] -
 22:21, 23:13
Ellis [1] - 10:19
emphasis [1] - 2:20
employer [6] - 16:7,
 16:10, 16:11, 16:16,
 19:8, 19:10
enabled [1] - 25:3
enacted [1] - 23:25
enacting [1] - 22:16
endow [1] - 6:17
ends [1] - 7:2
enter [1] - 2:2
entire [1] - 7:16
entitled [1] - 5:4
ESQUIRE [2] - 1:16,
 1:18
establish [4] - 2:21,
 4:7, 4:11, 21:2
establishing [1] -
 20:22
et [1] - 1:6
evaluate [1] - 9:23
everywhere [1] - 11:5
evidence [1] - 5:5
evident [3] - 3:7,
 13:16, 13:19
Ewald [6] - 12:4, 12:8,
 15:13, 15:19, 17:3,
 19:1
exactly [5] - 3:7, 3:15,
 6:23, 11:7, 14:14
exception [1] - 14:6
exist [1] - 23:20
expenses [2] - 16:6,
 19:15
explained [1] - 24:17
explanation [2] -
 21:24, 24:8

**F**

F.3d [2] - 20:17, 20:21
fact [11] - 3:11, 6:5,
 6:8, 6:11, 7:18, 8:2,
 10:16, 12:13, 12:16,
 19:16, 21:2
facto [2] - 21:15, 22:4
facts [6] - 13:23,
 15:16, 18:17, 20:19,
 20:20, 25:9
factually [2] - 14:12,
 18:8
fair [1] - 17:19
fall [1] - 22:24
false [1] - 19:13

Fargo [1] - 13:25
favor [1] - 20:20
favorable [1] - 21:5
fax [6] - 3:25, 4:1,
 14:18, 14:19, 22:18
faxes [3] - 22:20,
 22:22, 23:14
federal [5] - 9:16,
 11:22, 11:25, 15:6,
 20:23
few [1] - 22:15
figure [1] - 7:11
file [1] - 17:25
filed [8] - 4:16, 7:16,
 12:14, 15:17, 15:25,
 17:24, 18:11, 19:22
finally [2] - 16:19,
 19:18
Financial [1] - 11:20
fine [2] - 9:3, 20:10
first [7] - 2:1, 9:2,
 11:10, 11:19, 13:24,
 14:18, 24:23
First [2] - 12:25, 18:24
FISHER [1] - 1:9
five [2] - 11:10, 23:9
followed [1] - 24:12
follows [1] - 15:16
FOR [2] - 1:16, 1:18
forth [4] - 5:10, 6:12,
 10:20, 24:18
forward [3] - 9:14,
 17:21, 26:12
four [1] - 22:17
Francis [1] - 1:24
FRANCIS [1] - 1:24
front [1] - 11:19
full [1] - 24:8
funds [10] - 7:2, 7:9,
 7:15, 7:17, 7:19,
 7:24, 8:1, 8:13, 19:4
futile [1] - 26:21

**G**

Gable [1] - 1:24
GABLE [1] - 1:24
gamesmanship [1] -
 17:15
Generally [3] - 20:18,
 20:22, 21:6
generally [2] - 23:2,
 23:18
given [2] - 16:6, 17:17
Gomez [2] - 12:14,
 12:15
granted [6] - 14:23,
 16:7, 16:10, 18:10,
 26:8, 26:18

grants [1] - 3:12
Grimm [1] - 2:8
GRIMM [1] - 1:17
guess [1] - 8:8
gym [4] - 7:6, 16:8,
 19:17

**H**

handle [1] - 26:13
harassment [3] -
 25:19, 25:20, 25:21
hard [1] - 12:7
harm [17] - 3:10, 3:20,
 4:4, 6:6, 9:21, 10:12,
 10:13, 13:15, 13:16,
 13:18, 14:5, 14:20,
 14:23, 14:24, 15:2
harms [2] - 9:24, 22:1
head [1] - 19:19
hear [2] - 18:6
heard [2] - 2:12, 12:8
HEARING [1] - 1:21
hearing [1] - 2:14
held [7] - 13:3, 13:10,
 13:17, 14:4, 15:9,
 17:16, 17:17
history [1] - 9:24
hit [2] - 16:17, 19:18
hits [1] - 16:15
holder [1] - 8:4
Honor [38] - 2:4, 2:19,
 3:4, 3:7, 3:19, 4:3,
 4:9, 4:12, 4:15, 4:18,
 4:24, 5:3, 5:6, 5:9,
 5:16, 5:22, 6:4, 6:13,
 6:20, 6:22, 7:4, 7:10,
 7:14, 8:2, 8:14, 8:18,
 8:22, 9:3, 11:1,
 13:25, 18:24, 19:7,
 19:18, 20:1, 20:4,
 26:15, 26:23, 26:24
HONORABLE [1] -
 1:12
hope [1] - 14:2
hyperbole [1] - 19:10

**I**

identified [1] - 21:10
identify [1] - 21:25
identifying [3] - 3:10,
 20:25, 22:9
ignore [1] - 18:17
ignored [1] - 3:3
III [3] - 4:12, 9:16, 22:1
impact [1] - 25:21
important [2] - 18:2,

22:2
imposition [1] - 22:21
inadequate [1] - 22:5
inapposite [1] - 13:22
INC [1] - 1:6
including [1] - 7:21
incorrect [2] - 16:22,
 17:8
indicate [1] - 23:15
indicated [2] - 23:19,
 26:19
indicates [2] - 21:14,
 21:19
individual [2] - 18:8,
 21:13
inherent [1] - 3:7
injuries [9] - 3:6, 9:22,
 13:12, 15:3, 15:8,
 21:22, 22:4, 25:25
injury [31] - 2:22, 3:11,
 4:10, 9:5, 9:19, 9:21,
 9:22, 10:7, 10:8,
 12:13, 12:16, 13:4,
 13:5, 13:8, 15:2,
 19:23, 20:5, 21:2,
 21:3, 21:4, 21:6,
 21:12, 21:14, 21:15,
 22:9, 24:19, 25:5,
 25:13, 26:4
injury-in-fact [1] -
 3:11
instances [1] - 19:3
instructive [1] - 22:2
insufficient [2] - 4:11,
 6:2
intangible [6] - 3:10,
 9:24, 15:2, 21:22,
 22:1, 25:24
Intangible [1] - 9:22
intended [1] - 10:13
intending [1] - 11:7
interim [1] - 7:19
interlocutory [1] -
 18:1
intrusion [1] - 3:22
invasion [1] - 22:20
inviting [1] - 14:2
involved [1] - 2:25
irrelevant [1] - 17:3
issue [16] - 5:1, 5:11,
 6:20, 6:21, 6:22, 8:3,
 10:5, 11:18, 11:21,
 11:24, 12:3, 12:24,
 14:22, 19:23, 20:17,
 24:1
issues [3] - 6:14, 6:18,
 10:20
itself [3] - 10:12, 13:7,
 13:16

22:2
imposition [1] - 22:21

**J**

JERSEY [3] - 1:1,
 1:10, 1:13
Johnson [1] - 25:18
Joshua [1] - 2:7
JOSHUA [1] - 1:18
Judge [3] - 21:9,
 21:16, 24:17
JUDGE [1] - 1:12
Judgment [3] - 8:9,
 8:10, 16:25
judgment [11] - 6:20,
 7:14, 7:23, 9:25,
 12:11, 15:17, 15:18,
 15:20, 17:4, 18:13,
 22:2
judicial [1] - 21:1
July [2] - 3:16, 24:7
jurisdiction [2] - 5:1,
 5:12
jurisdictional [1] -
 20:17
Justice [2] - 12:11,
 21:9

**K**

kept [2] - 7:15, 8:13

**L**

lack [1] - 26:7
last [1] - 15:1
lasted [2] - 22:14,
 24:12
law [3] - 5:3, 22:5
leave [1] - 14:24
left [1] - 4:9
legal [1] - 25:21
legally [1] - 22:4
legitimate [1] - 25:14
lend [1] - 9:10
life [2] - 15:8, 26:3
light [1] - 26:15
likelihood [1] - 21:4
limited [2] - 25:25,
 26:1
limits [1] - 20:25
linchpin [2] - 7:1, 7:22
lines [2] - 22:18, 25:14
list [1] - 3:2
litigation [1] - 12:15
live [1] - 17:18
LLC [1] - 1:15
look [2] - 9:17, 9:24,
 10:17, 19:20, 22:10,

23:2, 23:18
**looked** [2] - 19:24, 24:22
**looking** [2] - 14:13, 23:12
**loss** [2] - 23:23, 24:19
**lost** [1] - 15:7
**low** [1] - 25:4
**Lujan** [3] - 21:1, 21:5, 22:6

## M

**machine** [1] - 3:25
**machine's** [1] - 4:1
**machines** [2] - 11:6, 22:19
**majority** [1] - 7:21
**maker** [1] - 3:2
**manager** [2] - 15:25, 16:5
**manufacture** [2] - 4:14, 14:7
**March** [2] - 7:10, 7:15
**MARCUS** [16] - 1:15, 1:16, 2:4, 8:20, 8:22, 8:24, 9:2, 10:3, 11:1, 14:9, 14:11, 14:14, 15:16, 20:7, 20:9, 26:23
**Marcus** [7] - 2:4, 2:5, 2:6, 8:20, 8:21, 22:13, 26:18
**Mark** [1] - 10:19
**massive** [2] - 25:3, 25:8
**Mateo** [1] - 19:2
**material** [1] - 20:19
**Matter** [1] - 26:25
**matter** [4] - 2:1, 5:21, 7:18, 26:14
**mean** [3] - 3:10, 11:22, 23:9
**meaning** [3] - 20:24, 21:17, 23:21
**means** [1] - 23:3
**meant** [2] - 21:17, 23:20
**meet** [1] - 22:1
**members** [2] - 4:3, 4:8
**membership** [5] - 7:5, 7:7, 16:8, 19:12, 19:17
**mention** [4] - 13:6, 13:13, 13:19, 13:23
**mentioned** [4] - 9:17, 9:20, 12:5, 15:8
**merely** [1] - 13:11
**message** [5] - 12:6,

12:17, 12:18, 24:11
**Mey** [2] - 13:17, 25:23
**Might** [1] - 2:15
**might** [2] - 5:25, 6:1
**Mims** [1] - 11:20
**mind** [2] - 12:7, 24:21
**minimizing** [1] - 22:17
**minimum** [1] - 22:1
**minimus** [3] - 10:8, 23:24, 24:20
**minor** [1] - 15:5
**minute** [6] - 22:15, 23:4, 23:22, 24:12, 24:20, 26:4
**minutes** [3] - 4:4, 25:25, 26:1
**misrepresentation** [3] - 17:12, 18:25, 19:5
**mitigate** [1] - 11:14
**money** [11] - 15:22, 16:2, 16:21, 17:2, 17:7, 17:10, 17:24, 18:18, 19:11, 19:14
**months** [3] - 7:17, 7:18, 7:25
**moot** [7] - 12:11, 15:20, 17:4, 18:3, 18:14, 18:19, 26:11
**morning** [4] - 2:4, 2:6, 2:7, 2:9
**most** [1] - 24:1
**motion** [16] - 2:10, 4:23, 5:11, 7:16, 13:2, 15:25, 17:20, 17:25, 18:12, 18:21, 20:15, 25:24, 26:7, 26:9, 26:12, 26:18
**MOTION** [1] - 1:21
**move** [1] - 9:14
**moved** [1] - 17:21
**moving** [1] - 20:20
**Mr..** [1] - 8:19
**must** [9] - 17:18, 20:18, 21:6, 21:11, 21:12, 21:14, 21:15, 23:19

## N

**name** [2] - 16:1, 16:24
**named** [1] - 18:4
**nature** [1] - 23:23
**need** [11] - 9:20, 9:21, 10:9, 13:7, 13:20, 15:6, 17:9, 18:9, 21:2, 26:10, 26:13
**needed** [3] - 9:15, 10:7, 21:20
**needn't** [1] - 5:6

needs [1] - 23:7
**never** [4] - 16:3, 16:23, 18:17
**nevertheless** [2] - 9:23, 21:23
**NEW** [3] - 1:1, 1:10, 1:13
**New** [1] - 2:13
**next** [1] - 9:10
**Ninth** [2] - 9:6, 17:16
**NO** [1] - 1:5
**non** [1] - 20:20
**non-moving** [1] - 20:20
**nonconsensual** [2] - 22:21, 23:13
**nonsense** [1] - 20:3
**Noreen** [1] - 16:24
**NOREEN** [1] - 1:3
**noted** [1] - 12:11
**notice** [1] - 16:23
**notified** [1] - 15:21
**nuisance** [1] - 15:7
**number** [2] - 9:23, 10:25
**numbers** [1] - 25:13

## O

**obviously** [2] - 11:24, 14:4
**occurred** [1] - 22:9
**OF** [2] - 1:1, 1:13
**offer** [13] - 6:20, 6:24, 7:14, 7:23, 12:10, 15:17, 15:18, 15:20, 17:4, 18:13, 18:20
**office** [5] - 15:25, 16:5, 16:6, 19:15
**OFFICIAL** [1] - 1:25
**often** [1] - 8:23
**old** [1] - 26:1
**ON** [1] - 1:21
**once** [3] - 5:18, 23:9, 23:11
**One** [3] - 9:20, 13:10, 20:3
**one** [33] - 2:20, 3:3, 3:17, 5:23, 6:5, 6:11, 9:3, 10:1, 10:4, 10:10, 10:11, 10:22, 10:24, 11:2, 12:6, 12:18, 15:11, 16:8, 18:19, 20:1, 20:7, 20:9, 22:14, 23:4, 23:16, 23:22, 24:12, 25:7, 25:16, 25:21, 26:19
**one-minute** [2] - 23:4,

23:22
**opening** [1] - 5:10
**opinions** [1] - 18:5
**opportunity** [4] - 5:13, 17:5, 17:19, 18:11
**Orange** [1] - 17:23
**order** [2] - 21:11, 21:21
**original** [3] - 5:19, 7:16, 19:23
**otherwise** [3] - 4:21, 5:20, 25:1
**OUT** [1] - 1:6
**outlier** [2] - 15:11, 18:19
**own** [1] - 17:18

## P

**Pablo** [1] - 19:2
**page** [2] - 22:6, 25:7
**paid** [2] - 17:24, 23:25
**papers** [2] - 2:17, 5:10
**Paragraph** [2] - 24:6, 24:11
**part** [1] - 16:7
**particularization** [1] - 21:20
**particularized** [7] - 9:18, 13:12, 21:7, 21:10, 21:12, 25:13, 26:5
**parties** [1] - 23:25
**Party** [1] - 20:17
**party** [1] - 20:20
**passed** [1] - 22:8
**past** [1] - 23:11
**pattern** [2] - 23:8, 24:9
**patterns** [1] - 23:12
**pause** [1] - 24:12
**pay** [2] - 24:3, 26:2
**paying** [1] - 18:3
**payment** [2] - 6:25, 8:5
**PC** [1] - 1:17
**pending** [1] - 15:18
**people** [1] - 22:12
**per** [1] - 11:12
**perhaps** [1] - 19:13
**period** [2] - 24:14, 25:4
**perk** [1] - 16:7
**permission** [1] - 16:10
**permit** [1] - 26:12
**person** [4] - 3:12, 3:13, 6:9, 22:10
**personal** [5] - 12:14, 13:11, 19:17, 21:13, 25:12

**PETER** [1] - 1:12
**PGS** [1] - 1:5
**phone** [14] - 3:18, 3:25, 4:10, 4:15, 5:23, 6:6, 10:12, 12:25, 16:19, 20:4, 22:18, 23:3, 24:8
**phones** [1] - 23:3
**PLAINTIFF** [2] - 1:4, 1:16
**Plaintiff** [5] - 3:21, 11:12, 15:22, 16:5, 20:21
**plaintiff** [47] - 2:3, 2:5, 2:21, 3:5, 3:11, 3:19, 4:6, 4:9, 4:13, 5:13, 5:23, 6:5, 6:17, 6:24, 7:1, 7:15, 9:4, 9:11, 9:12, 9:18, 11:9, 11:24, 12:20, 12:22, 13:12, 13:14, 13:18, 14:1, 14:19, 14:21, 14:23, 16:21, 17:4, 17:17, 17:24, 18:4, 18:10, 18:17, 18:18, 19:3, 19:12, 21:11, 21:13, 23:22, 24:7, 24:23
**plaintiff's** [2] - 5:7, 6:3
**plaintiffs** [5] - 3:1, 5:18, 15:12, 24:25, 25:11
**plans** [3] - 24:2, 26:2
**Pleasant** [1] - 20:21
**plural** [1] - 23:14
**point** [11] - 6:14, 7:17, 9:3, 11:17, 14:14, 15:1, 18:12, 20:7, 24:23, 26:21
**Point** [1] - 20:21
**points** [1] - 9:20
**position** [2] - 13:3, 13:22, 14:16
**positioned** [1] - 21:25
**post** [2] - 15:9, 15:11
**post-Spokeo** [2] - 15:9, 15:11
**power** [2] - 23:23, 24:20
**pre** [2] - 11:17, 12:2
**Pre** [1] - 11:18
**pre-Spokeo** [2] - 11:17, 12:2
**Pre-Spokeo** [1] - 11:18
**prerecorded** [1] - 24:11
**presume** [1] - 5:20
**pretenses** [1] - 19:13
**prevention** [3] - 10:18,

22:19, 23:6
**previous** [1] - 10:5
**previously** [1] - 22:5
**principle** [1] - 9:9
**privacy** [2] - 3:23, 22:21
**private** [2] - 22:18, 23:3
**procedural** [2] - 13:4, 14:22
**process** [1] - 21:1
**properly** [1] - 20:16
**property** [1] - 15:7
**proposed** [1] - 18:3
**protect** [2] - 11:8, 22:12
**Protection** [2] - 22:11, 22:16
**proven** [1] - 24:25
**purchased** [1] - 14:1
**purports** [1] - 3:13
**purpose** [1] - 23:1
**purposes** [3] - 17:1, 22:17, 23:2
**pursuant** [1] - 20:16
**put** [3] - 2:20, 16:2, 16:22
**putative** [2] - 4:3, 6:3

## Q

**quick** [1] - 20:7
**quickly** [2] - 13:1, 15:14
**quote** [3] - 9:22, 12:13, 18:2
**quoting** [1] - 3:9

## R

**R.M.R** [1] - 1:24
**random** [1] - 22:17
**rate** [1] - 22:15
**rather** [1] - 24:19
**rationale** [1] - 26:21
**read** [1] - 2:17
**reading** [2] - 10:19, 11:2
**real** [3] - 15:3, 21:18, 23:21
**really** [5] - 6:10, 24:8, 24:10, 24:18, 26:9
**reason** [5] - 9:7, 12:5, 15:23, 18:5, 26:13
**reasons** [2] - 18:20, 26:17
**receipt** [2] - 7:23, 12:12

receive [1] - 17:2
**received** [18] - 5:23, 6:1, 6:5, 6:25, 7:19, 7:24, 8:2, 10:4, 12:16, 16:21, 17:7, 17:10, 18:17, 18:18, 19:4, 23:25, 24:7, 26:3
**receives** [1] - 7:2
**recent** [2] - 2:22, 17:22
**recently** [2] - 12:4, 17:16
**recipient** [1] - 4:20
**recipients** [2] - 22:22, 23:13
**recognize** [1] - 6:13
**record** [2] - 19:9, 19:24
**records** [1] - 19:20
**redressed** [1] - 21:5
**reference** [1] - 6:10
**refund** [4] - 7:12, 7:14, 8:7, 8:8
**refunded** [3] - 7:9, 7:19, 19:14
**regard** [3] - 22:10, 24:16, 26:9
**rejected** [1] - 3:8
**related** [1] - 24:9
**relationship** [2] - 22:23, 23:15
**relevance** [1] - 13:24
**relevant** [2] - 14:16, 14:25
**reliance** [1] - 4:3
**relies** [1] - 2:21
**relying** [1] - 4:7
**remanded** [1] - 9:6
**remember** [1] - 8:23
**repeated** [10] - 10:18, 10:22, 10:23, 19:19, 20:1, 20:10, 20:13, 22:19, 23:6, 25:17
**repeatedness** [2] - 23:8, 24:9
**reply** [3] - 4:19, 14:17, 18:23
**REPORTER** [1] - 1:25
**representative** [2] - 4:6, 17:18
**represented** [1] - 10:3
**representing** [1] - 2:5
**require** [2] - 23:7, 24:25
**required** [2] - 1:23, 3:20
**requirement** [1] - 3:12
**requirements** [1] - 22:1

**resolved** [1] - 21:1
**respect** [1] - 19:8
**rest** [1] - 20:3
**result** [2] - 3:17, 3:23
**resulting** [1] - 3:21
**return** [1] - 7:17
**reversed** [1] - 9:12
**review** [1] - 5:4
**reviewed** [1] - 26:6
**risk** [2] - 9:21, 15:2
**Roberts** [1] - 12:11
**robo** [2] - 25:2, 25:8
**robo-calls** [2] - 25:2, 25:8
**Rogers** [2] - 13:10, 25:11
**role** [1] - 3:9
**Roma** [1] - 4:18
**Rule** [4] - 5:2, 15:18, 18:20, 19:4

## S

**San** [2] - 19:2
**Sartin** [1] - 14:18
**satisfied** [1] - 19:4
**satisfies** [1] - 3:11
**satisfy** [1] - 6:3
**save** [1] - 7:25
**saw** [1] - 16:23
**Second** [1] - 13:10
**second** [6] - 6:19, 14:17, 24:12, 26:9
**Secondly** [2] - 19:7, 23:6
**seconds** [2] - 22:15, 24:13
**Section** [1] - 1:23
**see** [11] - 5:14, 16:3, 19:20, 22:11, 24:5, 25:9, 25:20, 26:13, 26:20
**seeks** [1] - 4:6
**seem** [4] - 24:4, 24:13, 24:14, 24:20
**self** [3] - 3:7, 13:16, 13:19
**self-evident** [3] - 3:7, 13:16, 13:19
**sense** [1] - 24:15
**sent** [1] - 8:5
**serve** [2] - 4:6, 6:3
**set** [4] - 5:9, 6:12, 10:20, 24:18
**seven** [1] - 23:9
**severity** [1] - 25:5
**SHERIDAN** [1] - 1:12
**short** [1] - 25:4
**show** [2] - 17:19,

21:11
**shown** [1] - 21:21
**signed** [2] - 19:12, 19:14
**significant** [2] - 24:14, 24:21
**similar** [1] - 18:8
**simply** [2] - 4:14, 6:14
**single** [7] - 2:20, 3:3, 3:17, 4:10, 4:19, 6:23
**six** [2] - 11:10, 24:12
**six-second** [1] - 24:12
**small** [3] - 10:8, 15:6, 15:8
**solely** [1] - 18:3
**solicitation** [1] - 22:17
**solicitors** [1] - 23:1
**someone** [2] - 16:19
**sorry** [2] - 8:21, 17:23
**sought** [1] - 5:19
**South** [2] - 17:22, 17:23
**specious** [1] - 19:21
**spent** [1] - 4:2
**Spokeo** [24] - 2:22, 3:9, 3:20, 8:25, 9:2, 9:4, 9:14, 9:17, 11:17, 11:18, 12:2, 12:7, 12:18, 12:19, 12:24, 13:4, 14:20, 15:1, 15:9, 15:11, 21:8, 21:9, 22:3, 24:16
**stake** [1] - 12:15
**standard** [1] - 5:4
**standing** [35] - 4:7, 4:11, 6:4, 6:17, 9:5, 9:11, 9:12, 9:16, 10:6, 10:14, 10:15, 12:3, 12:21, 12:22, 13:6, 13:7, 13:9, 13:13, 13:18, 14:6, 14:21, 15:6, 15:10, 15:12, 20:11, 20:14, 20:16, 20:22, 20:24, 21:2, 21:21, 25:6, 26:8
**start** [2] - 2:3, 17:15
**STATE** [1] - 1:9
**state** [2] - 9:4, 14:21
**States** [1] - 2:23
**STATES** [1] - 1:1
**stating** [1] - 15:4
**status** [1] - 22:3
**statute** [3] - 3:12, 22:8, 23:24
**statute's** [1] - 11:2
**statutory** [2] - 3:12, 11:12

**stayed** [1] - 15:18
**step** [1] - 9:10
**still** [2] - 6:16, 15:24
**stipulating** [1] - 26:19
**Stoops** [3] - 13:25, 14:7, 14:16
**Storino** [1] - 20:20
**STREET** [1] - 1:9
**subject** [1] - 23:10
**submitted** [2] - 4:19, 8:11
**substantiate** [1] - 8:12
**sue** [5] - 3:13, 11:21, 11:25, 13:18, 14:3
**sued** [2] - 11:9, 11:15
**suffered** [5] - 4:4, 12:16, 13:12, 13:13, 25:13
**sufficient** [2] - 13:15, 21:6
**sufficiently** [3] - 13:6, 13:8, 25:5
**suit** [4] - 7:12, 7:13, 12:14
**support** [4] - 13:3, 13:13, 13:21, 14:15
**Supreme** [15] - 2:23, 3:8, 4:5, 9:10, 9:20, 10:7, 11:17, 11:23, 12:7, 15:19, 17:6, 17:9, 17:10, 17:13, 19:5
**Sussino** [2] - 2:1, 16:24
**SUSSINO** [1] - 1:3
**sustained** [1] - 3:6
**synonymous** [1] - 21:22

## T

**talks** [3] - 10:17, 23:22, 25:15
**tangible** [3] - 9:21, 15:3, 21:22
**TCPA** [17] - 10:17, 10:19, 11:18, 11:19, 11:22, 12:5, 13:5, 13:7, 13:16, 14:3, 14:19, 15:12, 20:11, 20:12, 22:7, 22:25, 24:24
**teach** [1] - 9:14
**telemarketing** [3] - 10:18, 22:20, 23:7
**telephone** [6] - 12:12, 22:14, 23:8, 23:11, 24:2, 24:7
**Telephone** [2] - 22:11,

22:16

**tender** [3] - 7:23, 8:8, 17:9

**Tender** [3] - 8:9, 8:10, 16:24

**tendered** [2] - 6:25, 17:7

**term** [2] - 21:18, 23:21

**terms** [2] - 10:21, 21:10

**text** [4] - 12:6, 12:17, 12:18

**Thereafter** [1] - 15:21

**therefore** [1] - 22:8

**They've** [1] - 5:18

**they've** [1] - 5:20

**thinking** [2] - 12:1, 23:16

**third** [2] - 13:17, 18:10

**thousand** [1] - 10:11

**three** [8] - 3:16, 7:24, 9:20, 9:23, 13:1, 15:9, 19:2, 23:9

**tied** [3] - 22:18, 23:2, 23:4

**timing** [1] - 7:8

**Title** [1] - 1:23

**TO** [1] - 1:21

**today** [1] - 11:4

**took** [2] - 3:24, 16:17

**total** [1] - 24:13

**toward** [3] - 10:6, 11:11, 20:14

**towards** [4] - 10:6, 10:10, 20:10, 20:11

**transaction** [1] - 8:12

**transparent** [1] - 8:11

**TRENTON** [1] - 1:10

**tried** [2] - 3:1, 7:17

**true** [4] - 1:23, 5:7, 11:1, 20:18

**try** [2] - 3:5, 7:25

**trying** [4] - 7:11, 10:21, 19:22, 22:12

**twice** [2] - 11:18, 23:11

**two** [7] - 4:15, 6:14, 9:9, 9:21, 11:19, 13:21, 24:13

**Two** [1] - 18:8

**type** [4] - 3:8, 22:12, 23:8, 26:4

**types** [1] - 23:11

**U**

**U.S** [3] - 1:12, 1:25, 21:1

**U.S.C** [1] - 1:23

**unanswered** [10] - 2:20, 2:21, 3:3, 3:18, 4:10, 4:15, 5:23, 6:5, 6:11, 20:4

**unauthorized** [1] - 12:16

**unavailable** [1] - 25:14

**under** [8] - 2:22, 4:11, 9:16, 11:18, 11:22, 14:3, 19:13, 20:23

**underlying** [1] - 22:7

**understood** [1] - 12:21

**undisputedly** [1] - 12:13

**UNITED** [1] - 1:1

**United** [1] - 2:22

**unless** [1] - 20:12

**unlike** [1] - 5:6

**unlimited** [1] - 24:3

**uno** [1] - 8:2

**unwanted** [4] - 12:12, 12:25, 13:19, 25:15

**up** [7] - 6:8, 11:5, 13:21, 14:17, 22:18, 23:3, 23:4

**usual** [2] - 21:17, 23:21

**V**

**versus** [1] - 2:1

**view** [1] - 24:16

**vindicate** [1] - 3:14

**violation** [6] - 11:3, 11:4, 11:16, 15:12, 20:11, 20:12

**violations** [1] - 24:25

**Vs** [1] - 1:5

**W**

**wait** [1] - 16:15

**waited** [3] - 11:10, 11:13, 20:3

**Waited** [1] - 16:16

**wants** [1] - 20:12

**warranted** [1] - 17:19

**Warranty** [2] - 13:17, 25:23

**waste** [1] - 25:1

**Webster's** [1] - 21:18

**Wells** [1] - 13:25

**whatsoever** [1] - 4:16

**whole** [1] - 2:19

**widespread** [2] - 25:1, 25:8

**wish** [2] - 2:12, 18:23

**WL** [2] - 25:6, 25:11

**word** [2] - 23:20, 24:15

**WORK** [1] - 1:6

**World** [5] - 2:2, 16:12, 16:13, 16:18

**WORLD** [1] - 1:6

**would-be** [1] - 17:17

**WOW** [3] - 8:9, 8:10, 16:24

**write** [2] - 8:1, 16:15

**writes** [1] - 21:17

**written** [1] - 14:20

**wrote** [1] - 24:24

**Y**

**year** [1] - 7:15

**York** [1] - 2:13

**Z**

**ZELMAN** [1] - 1:15

**Zelman** [1] - 2:5