# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOREEN SUSINNO, <br><br> *Plaintiff,* <br><br> v. <br><br> WORK OUT WORLD, INC., et al. <br><br> *Defendants.* | Civil Action No. 15-cv-5881 (PGS) <br><br><br> MEMORANDUM AND ORDER |

**SHERIDAN, U.S.D.J.**

Presently before the Court is Plaintiff Noreen Susinno's Motion for Class Certification, ECF No. 56. Plaintiff brings these claims on behalf of herself and others similarly situated against Defendant Work Out World, Inc.[1] ("WOW or Defendant"), under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (b)(1)(A)(iii) which makes it unlawful for any person to make a single telephone call to a cell phone, without prior express consent of the called party, using any automatic telephone dialing system of an artificial or prerecorded voice. Sussino v. Workout World, 862 F. 3d __ (3d Cir. ).

---

[1] In its sur-reply, Defendant (Work Out World, Inc.) argues for the first time that any claim of Plaintiff does not rise against it, as "a simple business record search confirms World Out World, Inc., is not even an entity in existence." (Def. Sur-Reply, ECF No. 62, at 2-3). Defendant's arguments fail for numerous reasons. First, as far as the Court can tell, this is the first instance where Defendant has raised the issue that it does not exist. Defendant proceeded with the litigation, including an appeal to the Third Circuit, as though it was a corporate entity that, in fact, was in existence. Even more, Defendant has on numerous occasions represented to this Court that it existed. (Answer, ECF No. 43, at ¶ 2; Amended Compl., ECF No. 15, at ¶ 1; ECF No. 56-5, at ¶ 3). Accordingly, this defense lacks merit.

1

I

Defendant operates eleven gym facilities in New Jersey. (Decl. of Stephen P. Roma ("Roma Decl."), Sr., ECF No. 59-1, at ¶ 2). Plaintiff was a previously a member of a WOW gym in Wall, New Jersey.( Pl. br., ECF No. 56-1, at 9). In or around July 2010, Defendant contracted with Global Connect, and Global Connect agreed to provide the Defendant the use of its software to place prerecorded calls through an automatic dialing system to "provide telephone broadcasting products and related services . . . ." (Roma Decl. at ¶ 4, First Amended Compl., ECF No. 15, at ¶ 20-22). Each individual WOW gym compiled telephone numbers of former members that were to be called and provided those telephone numbers to Global Connect. (*Id.* at ¶8). According to Plaintiff, "WOW created prerecorded messages soliciting . . . former members to rejoin WOW by purchasing an exclusive VIP membership . . . . " (Pl. br. at 9-10). Plaintiff alleges that she received the following message to her cell phone as a voicemail on July 28, 2015:

> "This is an important update pertaining to a letter we recently mailed you. We mistakenly failed to mention that, in the coming weeks, membership pricing at WOW will be increasing significantly. As a former member you have a chance to beat the upcoming price increase. Until July 31st we invite you and up to two friends or family to join WOW on this VIP membership that includes access to all locations, group classes, free babysitting, and free tanning. All for zero down and just twenty dollars per month. Plus the monthly dues are guaranteed to never increase. Remember this offer expires this Friday July 31st. Stop by any WOW location or simply join online at workoutworld.com/rejoin. That's workoutworld.com/rejoin."

(Prerecorded Messages, ECF No. 56-6; Dep. Of Noreen Susinno, T19:24 to 20:3; Broadcast Report, ECF No. 67-7, at 337).

According to Plaintiff, the following message played if the software detected a live answer to the call: "This is an important message from WOW Work Out World for [First name, Last name]. This message is about your membership account at WOW Work Out World. To find out

more, press 9. To no longer receive voice broadcast communication from WOW Work Out World, press 7." (Prerecorded Messages, ECF No. 56-6). If the recipient pressed 7, the following message played: "Thank you. Your phone number has been opted out of our voice broadcast system. We apologize for any inconvenience." (*Id.*) If the recipient instead pressed 9, the system played the same message that was left as a voicemail. (*Id.*)

Global Connect generated a Broadcast Report which identified 11,389 telephone numbers as ones that answered the prerecorded call, and 14,419 telephone numbers where a prerecorded message was recorded as a voicemail. (Decl. of Timothy J. Sostrin, ECF No. 56-9, at ¶¶ 6-8; Broadcast Report, ECF No. 56-7).

Plaintiff's counsel is Ari Marcus, Keith Keogh, and Timothy J. Sostrin. Plaintiff is currently employed by Richard Marcus, DMD, Ari Marcus' father, and works with Leo and Phillip Marcus, Ari Marcus' brothers. (Deposition of Noreen Susinno, ECF No. 59-3, at T8:18 to 9:18). According to Plaintiff, as part of her employment with Dr. Marcus, her employer, pays for her cell phone service, though she has purchased the cell phone itself. (*Id.* at T9:22 to 10:4).

II

"Class certification is appropriate when the prerequisites of Federal Rule of Civil Procedure 23 are met." *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 318 (3d Cir. 2016). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). To fall within this exception, a party moving to represent a class "must affirmatively demonstrate his [or her] compliance with Rule 23." *Id.* The Third Circuit has emphasized that "actual, not presumed, conformance with Rule 23 requirements is essential." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

"The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.*

To meet this burden, plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the three subsections of Rule 23(b). *See Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 183 (3d Cir. 2001). These four requirements under Rule 23(a) are referred to as numerosity, commonality, typicality, and adequate representation. *Id.* Additionally, a plaintiff must show that the proposed class satisfies either Rule23(b)(1), (b)(2), or (b)(3). *Marcus,* 687 F.3d at 590 (3d Cir. 2012).

Here, Plaintiff seeks class certification under Rule 23(b)(3), which requires "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Courts must "rigorously analyze the evidence used to establish class certification in order to ensure compliance with Rule 23(a) and at least one of the subsections of Rule 23(b)." *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 370 (3d Cir. 2015) (citing *Comcast,* 133 S. Ct. at 1432). "This rigorous analysis may require a district court to address, at least in part, the merits of a plaintiff's underlying claim because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*

1. Rule 23(a)

a. Numerosity

Rule 23(a)(1) requires that a class action may only be maintained if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named

plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

Here, the Defendant does not contest, that Plaintiff satisfies the numerosity requirement. In this case, there are approximately 25,808 prospective class members identified by unique telephone numbers in the Broadcast Report. (Broadcast Report, ECF No. 67-7). This is far above the number of prospective class members generally found to satisfy the numerosity requirement. As such, the proposed class is sufficiently numerous that joinder of all members would be impractical.

b. Commonality

Under Rule 23(a)(2), the commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)). Accordingly, courts should focus "on whether the defendant's conduct [is] common as to all of the class members[.]" *Id.* "Since a single question of fact suffices to satisfy commonality, it is easily met." *Li*, 324 F.R.D. at 339.

Plaintiff identified the following common questions of law or fact:

(1) "whether WOW's prerecorded robocalls qualify as 'Telemarketing,' defined as 'the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person' 47 C.F.R. § 64.1200(f)(12)"; and (2) "whether WOW's written agreement advised the former customers that telemarketing will be done with autodialer equipment or pre-recorded messages and that consent is not a condition of purchase."

(Pl. br. at 19). Aside from these questions, all proposed class members were identified as prior members of WOW gyms, and are all recipients, as identified by the Broadcast Report, of automated calls placed by Global Connect on behalf of Defendant. Accordingly, there are common issues of both law and fact, and the commonality requirement of Rule 23(a)(2) are satisfied.

    c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality inquiry . . . centers on whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims or other class members will perforce be based." *Li*, 324 F.R.D. at 340. In determining "whether a plaintiff is markedly different from the class as a whole, we consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 597-98. Determining typicality requires analyzing

> three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Id.*

Here, Plaintiff argues that typicality is satisfied because Plaintiff and every prospective class member were subject to "WOW's use of the [Global Connect's] software on July 28, 2015 to deliver prerecorded robocalls to its former members soliciting them to rejoin the gym," and thus, the claims are based on a single legal theory, "that Defendant's conduct violated 47 U.S.C. § 227(b)(1)(A)-(B) and 47 C.F.R. § 64.1200(a)(2)-(3)." (Pl. br. at 20). In response, Defendant argues

6

that Plaintiff is not typical of the class, because there are facts and defenses unique to Plaintiff's claims, including: that Plaintiff spoliated evidence; that Plaintiff has not established that she actually received the call because she does not own the phone number to which the call was allegedly made; and that Plaintiff lacks standing to assert these claims. For the reasons that follow, each of Defendant's arguments are without merit.

i. Spoliation of Evidence

The Third Circuit has explained that a class representative is not typical if "the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). In order to defeat class representation, "a defendant must show some degree of likelihood a unique defense will play a significant role at trial." *Li v.*, 324 F.R.D. at 340 (quoting *Beck*, 457 F.3d at 301). If "an asserted unique defense has no merit, the defense will not preclude class certification." *Id.*

Defendant argues that Plaintiff failed to preserve the voicemail she received and the phone upon which the voicemail was received; for these reasons, spoliation will be a major focus of the defense of the case. (Def. br., ECF No. 59, at 22). Spoliation of evidence occurs where "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012). Spoliation requires intent that the "evidence was destroyed in order to prevent it from being used by the adverse party . . . To be clear, therefore, the mere destruction or loss of evidence in and of itself does not make out a claim for actionable spoliation; more must be shown." *Kuhar v. Petzl Co.*, No. 16-0395, 2018 U.S. Dist. LEXIS 205042, at *17-18 (D.N.J. Nov. 16, 2018) (collecting cases).

Defendant has failed to show any bad faith on behalf of Plaintiff in failing to keep the phone and voicemail. Even further, here, this evidence is otherwise accounted for because Plaintiff has provided a copy of the automated recording left to the prospective class members phones. (ECF No. 56-6). Global Connect has also provided a Broadcast Report, which indicates the exact message that was played on each prospective class member's phone. (Broadcast Report, ECF No. 56-7). Here, Defendant has not shown spoliation of the evidence to prevent Defendant from using the evidence.

  ii. Standing

Defendant next argues that Plaintiff is not typical of the class because she has not established that she "actually received" the automated call, because she does not "own the phone number to which the call was allegedly made." According to Plaintiff, she purchased the phone and paid for the physical phone itself, however, her employer maintains and pays for the cell phone service. (Susinno Dep., T36:6-18). Plaintiff is a "regular user" of the cell phone, as it was her personal phone. (Dep. Of Susinno, T39:14-19). *See, Susinno*, 862 F.3d at 34; *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3d Cir. 2015). Further, though Plaintiff has not retained the cell phone that received the voicemail, or the voicemail itself, Global Connects' Broadcast Report shows that Plaintiff's phone, received an automated call, and a voicemail recording on that phone. (Broadcast Report, ECF No. 67-7, at 337). It is evident that Plaintiff received an automated call like other members of the class.

 d. Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In ensuring that the class's interests are fully pursued, the adequacy inquiry requires the court to consider: (1) the qualifications of the proposed

class attorney to represent the class and (2) whether the named parties' interests conflict with those of the class. *In re Schering Plough Corp. ERISA Litig*, 589 F.3d 585, 597-98 (3d Cir. 2009). This inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296.

i. Relationship with Counsel

Defendant first argues that Plaintiff is inadequate to serve as class representative because Plaintiff has a close, personal relationship with her lawyer, as she is employed by her lawyer's father. However, "[t]he existence of a relationship between the named plaintiffs and members of counsel's firm, in the absence of proof that the named plaintiffs would receive a benefit not available to other class members, is not a basis to find that the law firm cannot adequately represent the class." *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 245 (D.N.J. 2007). In her deposition, Plaintiff indicated that she sought her counsel's legal advice because he was the son of her employer, and she was friendly with the Marcus family. (Susinno Dep. at T21:12-22:1). Though defendant argues that Plaintiff's "very livelihood is dependent on counsel's family," the fear that plaintiff would not fulfill her duty but would instead attempt to maximize the "return" for her counsel is not present here. Defendant has failed to show any evidence that Plaintiff has some overreaching expectation.

ii. Plaintiff's credibility

Defendant argues that Plaintiff is not adequate as she is not credible. "Problems of credibility, when sufficiently serious, can prevent a named plaintiff from being certified as a class representative." *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 397 (D.N.J. 1998).

However, at the class certification stage, "attacks on credibility are not often given much weight." *Id.*

Defendant points to numerous parts of Plaintiff's deposition where her statements were inconsistent with her previous testimony, or inconsistent with the counts contained in the Amended Complaint. However, many of these inconsistencies have no bearing on any legal issues before the court. For example, in Plaintiff's deposition, she had testified that she owned the cell phone, but had also testified that her employer owned the cell phone. (*See* Susinno Dep, T107-4 to 109-20). She also claimed in her complaint that she incurred charges for incoming calls on her cell phone, however, at deposition, testified that any charges were incurred by her employer. (*Compare* Amended Compl., ECF No. 15, at ¶ 24 *with* Dep. Of Susinno, T123-5 to 124-17). Upon review of the transcript of Plaintiff's deposition, Plaintiff was not attempting to intentionally misrepresent any material fact, but had some minor inconsistencies that are often present in any litigated matter.

Defendant also argues that Plaintiff lacks credibility, claiming that Plaintiff participated in an insurance fraud scheme with her counsel's father. This argument lacks merit. Plaintiff's employer's civil penalty for providing false and misleading claim information to insurance companies has no bearing on Plaintiff's credibility as a class representative in the present case. Plaintiff was not named in the civil penalty, nor has any criminal charges been brought against her.

iii. Ignorance of the Litigation

"[A] minimal degree of knowledge" about the litigation is adequate. *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 430 (3d Cir. 2016) (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)). "[A] proposed representative's lack of particularized knowledge concerning the dispute at issue 'does not render [a class representative] inadequate . . . [if] she has retained adequate counsel to represent her.'" *Carney v. Goldman*, No.

15-00260, 2018 U.S. Dist. LEXIS 90424, at *35 (D.N.J. May 30, 2018) (quoting *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 120 (D.N.J. 2003)).

Defendant has not provided any instances where Plaintiff was ignorant of the salient or material facts of the litigation. Even more, the Court declines to find that Plaintiff lacks a minimal degree of knowledge where here, she has retained adequate counsel to represent her.

Accordingly, the Court finds that Plaintiff will fairly and adequately protect the interests of the class, and the adequacy requirement of Rule 23(a)(4) is satisfied.

2. Rule 23(b)(3)

Parties seeking class certification must also establish that the class "is maintainable under one of the categories of Rule 23(b)." *Li*, 324 F.R.D. 331, 342 (quoting *Beck*, 457 F.3d at 301). Plaintiff argues here that "common questions predominate," and class certification is authorized under Rule 23(b)(3). (Pl. br. at 23). Rule 23(b)(3) provides "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that questions of law or fact common to class member predominate over any questions affecting only individual members, and that a class action is superior to other available methods . . . ."

a. Predominance

Predominance examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Marcus*, 687 F.3d at 600 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). At this certification stage, a court "must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)." *Id.* (citing *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir. 2011)). Here, a plaintiff "must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Id.* (quoting *Hydrogen Peroxide*, 552 F.3d at 311). "Because the nature

11

of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Marcus*, 687 F.3d at 600 (3d Cir. 2012).

Plaintiff brings her claim under the TCPA, and to show a violation under 47 U.S.C. §227(b)(1)(A)(iii), the prospective class members must show that Defendant made a call to a cell phone, using an automatic telephone dialing system or an artificial or prerecorded voice, without prior express written consent of each prospective class member. 47 U.S.C. §227(b)(1); *see also Doyle v. Fla. Health Sol., Inc.*, Ci No. 17-12231, 2018 U.S. Dist. LEXIS 148340, at *7-8 (D.N.J. Aug. 29, 2018).

Here, the common questions are: (1) whether Defendant made a call to each prospective class member's cell phone; (2) whether the calls themselves constituted telemarketing, as defined in 47 C.F.R. § 64.1200(f)(12); and (3) whether Defendant obtained prior express written consent of each prospective class member. 47 U.S.C. §227(b)(1); 47 C.F.R. § 64.1200 (a)(2)-(3).

Here, the parties do not contend that the prospective class members were ever given an opportunity to consent to any form of communication from Defendant. Accordingly, the questions of law or fact are common to class members and predominate over any questions affecting only individual members, and the predominance requirement of Rule 23(a)(4) is satisfied.

b. Superiority

Finally, "in addition to establishing predominance under Rule 23(b)(3), there must also be a finding 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Li*, 324 F.R.D. at 345 (quoting Fed. R. Civ. P. 23(b)(3)). In determining whether a class action is superior, courts consider "the class members' interests in

individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(a)-(d).

Defendant argues that a class action is not superior to other available methods of adjudication because the statute provides for monetary awards that exceed actual damages. (Def. br. at 32). Here, there are approximately 25,808 prospective class members as identified by the Broadcast Report, however, each prospective class member "has a very small claim in relation to the cost of prosecuting a lawsuit[,]" *i.e.*, $500 or up to $1,500 in treble damages. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). Accordingly, "a class action facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes." *Id.* The parties have also not identified any litigation concerning the controversy that has already begun. (Pl. br. at 27). Additionally, because there is a large number of potential class members, a class action is far desirable, and would be an efficient way to resolve thousands of individual matters with nearly identical TCPA claims. Accordingly, a class action is found to be superior.

## ORDER

This matter having come before the Court on Plaintiff's motion for class certification (ECF No. 56), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this __12__ day of September 2019;

**ORDERED** that Plaintiff's Motion for Class Certification (ECF No. 56) is GRANTED.

_____
PETER G. SHERIDAN, U.S.D.J.